**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| JUDE C. ASONIBE, et al., | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| v. | § | Civil Action No. 3:12-CV-2113-M (BH) |
| | § | |
| FLAGSTAR BANK, FSB, | § | |
| | § | |
| **Defendant.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to the order of reference dated July 13, 2012, this case has been referred for pretrial management. Before the Court for recommendation is *Defendant's Motion to Dismiss Complaint*, filed September 7, 2012 (doc. 11). Based on the relevant filings and applicable law, the motion should be **GRANTED**.

## I. BACKGROUND

This case involves attempted foreclosure of real property located at 2237 Southern Oaks Drive, Cedar Hill, Texas 75104 (the Property). (doc. 1-6 at 5.)[1] On June 5, 2012, Jude C. and Shirley N. Asonibe (Plaintiffs) filed suit against Flagstar Bank, FSB (Defendant) in the 192nd Judicial District Court of Dallas County, Texas. (*See id.* at 4.)

In their state court petition, Plaintiffs allege that they purchased the Property on November 7, 2008, with a promissory note and a deed of trust securing the note. (*Id.* at 5.) Both the note and deed of trust named Continental American Mortgage (Continental) as the "Lender." (*Id.* at 5, 12,

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

15.)  The deed of trust named Mortgage Electronic Registration Systems (MERS), the nominee for

Lender and its successors and assigns, as the beneficiary.  (*Id.* at 16.)  The deed of trust granted

MERS the right to exercise any and all of the interests Plaintiff granted Lender, including but not

limited to, the right to foreclose on and sell the Property and to take any action required of Lender,

including but not limited to, releasing and canceling the deed of trust.  (*Id.* at 17.)  MERS, acting as

the "nominee" for Lender and its successors and assigns, "purportedly assigned the Note and Trust

Deed to [Defendant]" on February 21, 2011.  (*Id.* at 5.)  The assignment was filed with the Dallas

County Clerk.  (*See id.* at 26–27.)

      Plaintiffs allege that MERS could not assign any rights in the note or deed of trust to

Defendant because it was not a party to the note and never had a beneficial interest in it, and because

Dallas County property records do not evidence an assignment of the note from Continental to

MERS.  (*Id.* at 5.)  The assignment therefore "only transferred the deed of trust and not the note,"

and the "note and deed of trust separated their paths" at that point.  (*Id.*)  Accordingly, Plaintiffs

contend, Defendant lacked authority to declare a default, accelerate the debt, appoint a substitute

trustee, or conduct a foreclosure sale.  (*Id.*)  Plaintiffs also allege that they were "asked to make their

monthly mortgage" payments to Defendant "from [the] very beginning," even though they executed

the original note and deed of trust in favor only of Continental, and the assignment of the note and

deed of trust from MERS to Defendant did not take place until February 2011.  (*Id.* at 6.)  They now

question the "capacity" in which Defendant collected their mortgage payments from them before

it obtained their loan via the assignment.  (*Id.*)  In addition, Federal National Mortgage Association

(Fannie Mae) purportedly claims to own Plaintiffs' loan, thereby "call[ing] into question the

legitimacy of Defendant's claims to an interest in the Note and/or Trust Deed."  (*Id.*)  Because both

Defendant and Fannie Mae claim to have an interest in the Property, Plaintiffs claim they "face[] the potential for multiple liabilities." (*Id.*)

Plaintiffs assert that "the Note ... passed through multiple entities ... before ultimately being transferred into [a] [securitization] trust." (*Id.* at 7.) Continental "was provided a line of credit by undisclosed warehouse lenders, pending [the] pooling of the Note with other such instruments ... pursuant to a Pooling and Servicing Agreement [PSA] for the purpose of selling such debt as securities ... to investors." (*Id.* at 6.) The securitization purportedly extinguished all the rights that Continental and MERS had in the note. (*Id.* at 6–7.) Additionally, "the transferees" of the note, i.e., the individuals who invested in the asset-backed securities, never recorded a security agreement "to perfect [their] right to enforce the debt," as required by Tex. Bus. and Com. Code §9.607(b). (*Id.* at 7.) As a result of the securitization, "and of the lack of [article 9] recordings," Defendant "is not the present owner of the debt ... [and] has no right to sell the Property" at a foreclosure sale. (*Id.*) Plaintiffs "demand" that Defendant produce "all information and records showing [the] transfer of [the] Note to determine the proper person(s)" who have the right "to receive payment under the Note, [and] to negotiate payment or reinstatement." (*Id.*)

Plaintiffs assert a claim for quiet title. (*Id.* at 10.) They seek "sanctions[,] imposition of fees and costs," exemplary damages, and "reasonable attorney's fees" against Defendant for committing "fraud upon the Court." (*Id.*) They also request reimbursement of "all [the] fees" they paid under the deed of trust, pre and post-judgment interest, and declaratory relief. (*Id.* at 10–11.)

On June 5, 2012, the state court issued a temporary restraining order restraining Defendant from foreclosing on the Property. (*Id.* at 32–34.) On July 3, 2012, Defendant removed the action to the U.S. District Court for the Northern District of Texas, asserting diversity jurisdiction under

3

28 U.S.C. § 1332.  (*See* doc. 1.)  On September 7, 2012, Defendant moved to dismiss Plaintiffs' complaint.  (*See* doc. 11.)  Plaintiffs filed a response (doc. 13), Defendant filed a reply (doc. 16), and the motion is now ripe for recommendation.

## II. RULE 12(b)(6) MOTION

Defendant moves to dismiss Plaintiffs' complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  (*See* doc. 11.)

**A.**     **Rule 12(b)(6) Standard**

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted. *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981).  Under the 12(b)(6) standard, a court cannot look beyond the pleadings.  *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal.  *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).  The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff.  *Baker*, 75 F.3d at 196.  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted).  Although "detailed factual allegations" are not necessary, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 555; *accord Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").  The alleged facts must "raise a right to relief above the speculative level."  *Twombly*,

550 U.S. at 555.  In short, a complaint fails to state a claim upon which relief may be granted when

it fails to plead "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows
> the court to draw the reasonable inference that the defendant is liable for the miscon
> duct alleged.  The plausibility standard is not akin to a "probability requirement," but
> it asks for more than a sheer possibility that a defendant has acted unlawfully.
> Where a complaint pleads facts that are "merely consistent with" a defendant's liabil
> ity, it "stops short of the line between possibility and plausibility of 'entitlement to
> relief.'"

*Iqbal*, 129 S. Ct. at 1949 (citations omitted).  When plaintiffs "have not nudged their claims across

the line from conceivable to plausible, their complaint must be dismissed."  *Twombly*, 550 U.S. at

570; *accord Iqbal*, 129 S. Ct. at 1950–51.

As noted, a court cannot look beyond the pleadings in deciding a 12(b)(6) motion.  *Spivey*,

197 F.3d at 774; *Baker*, 75 F.3d at 196.  Pleadings in the 12(b)(6) context include attachments to the

complaint.  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v.

Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).  Documents "attache[d] to a motion

to dismiss are considered part of the pleadings, if they are referred to in the plaintiff's complaint and

are central to her claim."  *Collins*, 224 F.3d at 499 (quoting *Venture Assocs. Corp. v. Zenith Data

Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)); *accord Benchmark Elecs., Inc. v. J.M. Huber Corp.*,

343 F.3d 719, 725 (5th Cir. 2003).  In addition, "it is clearly proper in deciding a 12(b)(6) motion

to take judicial notice of matters of public record."  *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9

(5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994).  When a party presents

"matters outside the pleading" with a Rule 12(b)(6) motion to dismiss, the Court has "complete

discretion" to either accept or exclude the evidence for purposes of the motion to dismiss.  *Isquith

ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 196 n.3 (5th Cir. 1988); *accord Gen. Retail*

*Servs., Inc. v. Wireless Toyz  Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2007).  However, "[i]f . . . matters outside the pleading are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).

Here, Plaintiffs attached to their complaint copies of what they contend are the original promissory note, the deed of trust, and the recorded assignment from MERS to Defendant.  (*See* doc. 1-6 at 12–27.)  These documents are considered part of the pleadings.  *See In re Katrina Canal Breaches Litig.*, 495 F.3d at 205.  Because the attachments to Plaintiffs' complaint are part of the pleadings, conversion of the motion to dismiss into a motion for summary judgment is unnecessary.

**B.      Lack of Standing**

Defendant contends that Plaintiffs "predicate the[ir] quiet title claim on ... the[ir] conclusory and speculative allegations that the Note and Deed of Trust might have been securitized."  (doc. 11 at 11.)  It further claims that "Plaintiffs' requested remedies for declaratory judgment and fees are predicated on the impropriety of the allegedly defective assignment[]" of the note and deed of trust from MERS to Defendant.  (*Id.* at 16.)  It argues that Plaintiffs "have no standing to complain about any alleged securitization of the[ir] loan" pursuant to the PSA because "they were not parties" to that agreement.  (*Id.* at 11.)  Likewise, Defendant argues that because Plaintiffs were not parties to the assignment from MERS to Defendant, they "lack standing to contest" it.[2]  (*Id.* at 15–16.)

---

[2]  Defendant separately lists and briefs its arguments that Plaintiffs lack standing to challenge the assignment of the note from an unspecified party to the asset-backed trust, as well as the assignment of the note and deed of trust from MERS to Defendant.  (*See* doc. 11 at 11, 15–16.)  These arguments are addressed together because they are essentially the same argument—that Plaintiffs lack standing to challenge any assignment of their mortgage to which they were not parties.

Plaintiffs contend that MERS had no "beneficial interests in the promissory note" because it was not a party to it and because there was no recorded assignment of the note from Continental to MERS.  (doc. 1-6 at 5.)  Accordingly, MERS had "no interests [in the note] that it could assign to Defendant," and the assignment "only transferred the deed of trust and not the note."  (*Id.*)  Plaintiffs allege that the note "separated" from the deed of trust upon the assignment and "passed through multiple entities ... before ultimately being transferred into the [securitization] trust."  (*Id.* at 5, 7–8.)  Because the securitization extinguished all the rights that Continental and MERS had in the note, Defendant acquired no interest in the note or deed of trust via the assignment from MERS, and is now "estopped [from] assert[ing] any present default on the Note, or power of sale under the Trust Deed."  (*Id.* at 7–8.)

Numerous district courts in Texas have held that "borrowers do not have standing[3] to challenge the assignments[4] of their mortgages because they are not parties to those assignments." *Kidd v. Fed. Nat. Mortg. Ass'n*, No. 3:12-CV-1733-B, 2012 WL 4900962, at *2 (N.D. Tex. Oct. 15, 2012) (collecting cases); *Abruzzo v. PNC Bank, N.A.*, No. 4:11-CV-735-Y, 2012 WL 3200871, at *2 (N.D. Tex. July 30, 2012) (holding that the "Plaintiffs [did] not have standing to ... challenge"

---

[3]  "Standing has both constitutional and prudential aspects."  *Logan v. Burgers Ozark Country Cured Hams Inc.*, 263 F.3d 447, 460 n.9 (5th Cir. 2001) (citation omitted).  The argument that non-parties lack standing to challenge an assignment implicates prudential standing.  Prudential standing encompasses "[j]udicially created limits" that concern whether: (1) a plaintiff's grievance falls within the zone of interests protected by the statute invoked, (2) the complaint raises a generalized grievance more properly addressed by the legislature, and (3) the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties. *Id.*; *see also Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004).  "Unlike a dismissal for lack of constitutional standing, which should be granted under Rule 12(b)(1), a dismissal for lack of prudential or statutory standing is properly granted under Rule 12(b)(6)." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 (5th Cir. 2011).

[4]  "[A]n assignment is a contract between the assignor of a right and an assignee, who receives the authority to assert that right." *Pagosa Oil & Gas, L.L.C. v. Marrs & Smith P'ship*, 323 S.W.3d 203, 211 (Tex.  App.—El Paso 2010, pet. denied); *accord D Design Holdings, LP v. MMO Corp.*, 339 S.W.3d 195, 200–01 (Tex. App.—Dallas 2011, no pet.).

the assignment of their mortgage from a securitization trust to the defendant, in violation of a "pooling-and-servicing agreement," "because they were not parties" to that agreement).

Citing to Texas law, however, some district courts have recognized two exceptions: (1) the assignee of a claim may sue the obligor for performance "under ... circumstances, ... render[ing] the assignment void, ... [but not] voidable,"[5] and (2) "under very limited circumstances, ... a defendant sued on a negotiable instrument [may] assert defenses and claims held by others." *Kramer v. Fannie Mae*, No. A–12–CA–276–SS, 2012 WL 3027990, at *4–5 (W.D. Tex. May 15, 2012) (citing to *Tri–Cities Const., Inc. v. American Nat. Ins. Co.*, 523 S.W.2d 426, 430 (Tex. Civ. App.—Houston [1st Dist.] 1975, no writ) and Tex. Bus. & Com. Code § 3.305(c)); *see also Puente v. CitiMortgage, Inc.*, No. 3:11-CV-2509-N, 2012 WL 4335997, at *6 (N.D. Tex. Aug. 29, 2012); *Miller*, 2012 WL 3206237, at *5. A void assignment may be challenged "because the only interest or right which an obligor of a claim has in the instrument of assignment is to insure [*sic*] himself that he will not have to pay the same claim twice."[6] *Tri–Cities Const., Inc.*, 523 S.W.2d at 430 (citation omitted). In *Kramer*, the court held that the plaintiff could not challenge the assignment of the deed of trust because neither exception applied, given that in foreclosing on his property, the "Defendants did not

---

[5] "Examples of 'voidable' defenses include the statute of frauds, ... fraud in the inducement, ... lack of capacity as a minor, ... and mutual mistake." *Miller v. Homecomings Fin., LLC*, No. 4:11-CV-04416, 2012 WL 3206237, at *5 (S.D. Tex. Aug. 8, 2012); *see also* Tex. Bus. & Com. Code Ann. § 3.202(a) (West 2002) (listing voidable defenses against the enforcement of a negotiable instrument).

[6] With respect to a mortgage, "[a] void contract of assignment confers no right to foreclose under the deed on the purported assignee while a voidable contract transfers the deed to the assignee—including the rights contained in it—subject to the rights of the assignor to set it aside upon proof [that] the contract was executed improperly." *Puente*, 2012 WL 4335997, at *6 n. 14 (citing to *Slaughter v. Qualls*, 139 Tex. 340, 162 S.W.2d 671, 674 (Tex. 1942); *see also Glass v. Carpenter*, 330 S.W.2d 530, 537 (Tex. Civ. App.—San Antonio 1959, writ ref'd n.r.e.) (explaining that if the assignment is "absolutely invalid or ineffective," "[a] debtor may … assert against the assignee … [his] lack of title or right to sue; but, if the assignment is effective to pass legal title, the debtor cannot interpose defects or objections which merely render the assignment voidable at the election of the assignor or those standing in his shoes.") (quoting 6A C.J.S. Assignments § 132) (database updated December 2012).

sue [the plaintiff] at all, and, even if they had, their suit would have been on the deed of trust, not

the ... promissory note … [and] there [was] no suggestion [he] [was] being put in a position where

he [would] have to pay the same claim twice." *Kramer*, 2012 WL 3027990, at *5.

Here, Plaintiffs do not allege that the assignment from MERS to Defendant was either void

or voidable; they aver only that the assignment did not transfer any rights in the note to Defendant

because MERS had no rights in it.  (*See* doc. 1-6 at 5.)  Plaintiffs also claim that they face "the

potential for multiple liabilities" because of the securitization of their loan and because of Fannie

Mae's alleged interest in the loan.  (*Id.* at 5–7, 9.)  As in *Kramer*, however, they do not allege they

have actually been sued on the note or were put in a position where they will have to pay the same

claim twice.  *See Kramer*, 2012 WL 3027990, at *5.  Plaintiffs also assert that the purported

assignment of the note from an unspecified party to the securitization trust extinguished all the rights

that Continental, MERS, or Defendant may have had in the note.  (*Id.* at 6–8.)  As with MERS's

assignment to Defendant, they do not specify whether the assignment of the note to the trust was

either void or voidable.[7]  (*See id.*)  Accordingly, they fail to allege any facts from which it could be

determined that they have standing to challenge either assignment.  *See Puente*, 2012 WL 4335997,

at *6 (holding that the court could not determine whether the plaintiffs had standing to challenge the

assignment of the deed of trust from MERS to the defendant because it was "unclear from [their]

complaint whether they allege[d] (1) that the assignment ... [was] *voidable* because, for example,

... the procedures ... employed were faulty, or (2) that the assignment was *void* and therefore

invalid") (emphasis in *Puente*).

---

[7]  In their response to Defendant's motion to dismiss, Plaintiffs cite case law for the proposition that debtors have standing to challenge void assignments, but they fail to allege any facts showing that any assignment of their mortgage was void.  (*See* doc. 13 at 5–7.)

To the extent that Plaintiffs' quiet title claim and requests for declaratory relief, exemplary damages, court costs, and attorney's fees are based on their allegations regarding the assignments of their loan, these are all subject to dismissal for failure to state a claim. *See Kidd*, 2012 WL 4900962, at *2 (dismissing quiet title claim and request for declaratory judgment where the plaintiff's theories for recovery were "based entirely on assignments and agreements to which [she] was not a party" and where she "[had] not ... alleged that multiple parties ha[d] attempted or [would] attempt to collect from [her]"); *Abruzzo*, 2012 WL 3200871, at *2 (holding that the plaintiffs had "failed to plead a plausible [quiet title] claim" based on their unsupported challenge of the assignment of their mortgage from a securitization trust to the defendant).[8]

## C.    Defendant's Authority to Foreclose[9]

Defendant contends that Plaintiffs' "contentions regarding MERS and [any] ownership of the Note are irrelevant" because in Texas, foreclosure "is governed by an entity's relationship to the deed of trust," not the note. (doc. 11 at 18–19.) It argues that because the deed of trust granted MERS the right to foreclose on and sell the Property, as well as the right to transfer the deed of trust, MERS could transfer all of those rights to Defendant even if it did not own or hold the note. (*Id.*) Accordingly, "[b]y virtue of [MERS's] Assignment, there [was] a clear chain of title from the original lender ... to [Defendant], and [Defendant] ... ha[d] authority to enforce the Deed of Trust and foreclose [on] the Property as mortgagee." (*Id.* at 17.) In their complaint, Plaintiffs allege that

---

[8]   Defendant also argues that "Plaintiffs' claims are premised on alleged defects in the securitization process," and cites case law for the proposition that such defects "are not relevant to the validity of the deed of trust assignments or the enforceability of the [n]ote and [d]eed of [t]rust." (*See* doc. 11 at 12–13.) Nevertheless, Plaintiffs do not appear to assert any defects in the securitization process of their loan; they argue only that the securitization of the note extinguished any rights that Defendant would have acquired in it via the assignment from MERS. (*See* doc. 1-6 at 6–8.)

[9]   Although Defendant lists and briefs this issue after addressing Plaintiffs' quiet title claim on the merits, the Court addresses it first because it relates to Plaintiffs' global theory of the case. (*See* doc. 11 at 15, 17–20.)

because MERS "had no ownership interest [in] [their] note and/or deed of trust," "there were no interests that it could assign to Defendant," and Defendant therefore acquired "no right to declare a default, accelerate the debt, appoint a substitute trustee, and/or conduct a foreclosure sale." (doc. 1-6 at 5.)  These allegations appear to be the basis for their quiet title claim, declaratory judgment action, and request for costs and attorney's fees.  (*See id.* at 8–11.)

The Texas Property Code allows mortgagees and mortgage servicers to conduct a non-judicial foreclosure sale "under a power of sale conferred by a deed of trust or other contract lien." Tex. Prop. Code Ann. § 51.002 (West 2007).  The Code defines mortgagee as "the grantee, beneficiary, owner, or holder of a security instrument," or "if the security interest has been assigned of record, the last person to whom the security interest has been assigned of record."  *Id.* § 51.0001(4)(A),(C).  It defines "mortgage servicer" as "the last person to whom a mortgagor has been instructed by the current mortgagee to send payments for the debt secured by a security instrument."  *Id.* § 51.0001(3).  A mortgagee may be its own mortgage servicer.  *Id.*

Courts have held that the Texas Property Code does not require a mortgagee or mortgage servicer to produce proof of ownership of the original note or deed of trust before conducting a non-judicial foreclosure sale.[10]  *Bennett v. JPMorgan Chase*, No. 3:12-CV-212-N, 2013 WL 655059, at *4 (N.D. Tex. Feb. 5, 2013), *recommendation adopted*, 2013 WL 655054 (N.D. Tex. Feb. 22, 2013);

---

[10]  "Texas courts have refused to conflate foreclosure with enforcement of a promissory note." *Reardean v. CitiMortgage, Inc.*, No. A-11-CA-420-SS, 2011 WL 3268307, at *3 (W.D. Tex. July 25, 2011).  Under Texas law, promissory notes and deeds of trust are distinct obligations that afford lenders distinct remedies upon default, "the note against the borrower and the lien against the real property."  *Bierwirth v. BAC Home Loans Servicing, L.P.*, No. 03-11-00644-CV, 2012 WL 3793190, at *3 (Tex. App.—Austin Aug. 30, 2012, no pet.) (mem. op.) (citation omitted).  When the lender seeks a personal judgment against the borrower, it "must typically demonstrate that it is the holder of the note by producing the original wet-ink instrument."  *Millet v. JP Morgan Chase, N.A.*, No. SA-11-CV-1031-XR, 2012 WL 1029497, at *3 (W.D. Tex. Mar. 26, 2012).  By contrast, "[f]oreclosure is an independent action against the collateral" that "enforces the deed of trust, not the underlying note."  *Reardean*, 2011 WL 3268307, at *3.

*Darocy v. Chase Home Fin., LLC*, No. 3:10-CV-1259-L, 2012 WL 840909, at *10 (N.D. Tex. Mar. 9, 2012) (citations omitted); *Cole v. Fed. Home Loan Mortg. Corp.*, No. 3:11-CV-1833-M-BK, 2012 WL 555194, at *2 (N.D. Tex. Jan. 23, 2012), *recommendation adopted*, 2012 WL 556055 (N.D. Tex. Feb. 21, 2012).   Production of the note is not required because the lender's authority to foreclose on the mortgaged property "is governed by [its] relationship to the deed of trust, rather than the associated note." *Kramer*, 2012 WL 3027990, at *7.   Production of the deed of trust is not required either because, as the statute provides, being the "holder" of a security instrument is only one of several ways to prove mortgagee status.   *See* Tex. Prop. Code Ann. § 51.0001(4)(A),(C).

A mortgage servicer may also administer a non-judicial foreclosure sale on behalf of a mortgagee if the two entities enter into a servicing agreement and provide the borrower with certain disclosures.   *See id.* § 51.0025.   As courts have noted, however, no provision of § 51.0025 "require[s] the mortgage servicer to be the 'holder' of the Note and Deed of Trust or to produce the original loan documents."   *Sawyer v. Mortgage Elec. Registration Sys., Inc.*, No. 3-09-CV2303-K, 2010 WL 996768, at *3 (N.D. Tex. Feb. 1, 2010), *recommendation adopted*, 2010 WL 996917 (N.D. Tex. Mar. 17, 2010); *see also Darocy*, 2012 WL 840909, at *10 (explaining that § 51.0025 of the Texas Property Code "contemplates that someone other than the holder of the original [security instrument] may lawfully foreclose on the security interest").

Here, the deed of trust named MERS as the beneficiary, making it the original mortgagee. *See* Tex. Prop. Code § 51.0001(4)(A);  (doc. 1-6 at 16).   As mortgagee, and as nominee for Lender and its successors and assigns, MERS held legal title to the Property and had the right to foreclose on and sell the Property upon Plaintiffs' default.   (*See* doc. 1-6 at 16–17.)   Upon the assignment of the deed of trust from MERS, Defendant and its successors and assigns became the new

mortgagee(s) and acquired all of MERS's rights.  *See Warren v. Bank of Am.*, N.A., No. 3:11-CV-3603-M, 2012 WL 3020075, at *4 (N.D. Tex. June 19, 2012), *recommendation adopted*, 2012 WL 3024746 (N.D. Tex. July 24, 2012) (finding that upon the assignment of the deed of trust from MERS to the defendant, the defendant "and its successors acquired [MERS's] rights to sell and foreclose on the property"); *Lamb v. Wells Fargo Bank*, N.A., 2012 WL 1888152, at *5 (N.D. Tex. May 24, 2012) (same); (*see also* doc. 1-6 at 26–27.)  As the new mortgagee, Defendant could foreclose on the Property upon Plaintiffs' default without having to produce the note or deed of trust.  *See Bennett*, 2013 WL 655059, at *5.

Moreover, although Plaintiffs now dispute Defendant's authority to collect their mortgage payments before the assignment took place, they do not claim that Defendant was never the servicer of their mortgage; their allegation that they were "asked" to make their mortgage payments to Defendant "from [the] very beginning" suggests that it was.  *See* Tex. Prop. Code Ann. § 51.0001(3); (doc. 1-6 at 6.)  As the servicer of their mortgage, Defendant could foreclose on the Property without producing the note, the deed of trust, or the assignment of either document.  *See Sawyer*, 2010 WL 996768, at *3; *see also* Tex. Prop. Code Ann. § 51.0025.  Accordingly, to the extent that Plaintiffs' quiet title claim and requests for other relief are based on their contention that Defendant lacked authority to foreclose because MERS could not assign the note to Defendant, these are subject to dismissal for failure to state a claim.[11]  *See Bennett*, 2013 WL 655059, at *4–5

---

[11]  Plaintiffs allege that in February 2011, MERS "purportedly assigned the Note and Trust Deed" to Defendant, but this assignment "only transferred the deed of trust and not the Note" because MERS had no beneficial interest in the note.  (doc. 1-6 at 5.)  They claim that upon the assignment, the "note and deed of trust separated their paths."  (*Id.*) These allegations, commonly referred to as the "split the note" theory, cannot support a valid claim for the additional reason that any transfer of the note or deed of trust automatically transfers the other.  *See Islamic Ass'n of DeSoto, Texas, Inc. v. Mortgage Elec. Registration Sys., Inc.*, No. 3:12-CV-0613-D, 2012 WL 2196040, at *3 (N.D. Tex. June 15, 2012) (Fitzwater, C.F.) (holding that "the transfer of an obligation secured by a note also transfers the note because the deed of trust and note are read together to evaluate their provisions"); *Kramer*, 2012 WL 3027990, at *5–6 (to same effect) (collecting cases).

(holding that all of the plaintiff's claims were subject to dismissal because they were based on his conclusory and unsupported allegation that the defendants "represented that they were entitled to foreclose pursuant to the powers in the Deed of Trust but they did not have the right to do so"); *compare Shelton v. Flagstar Bank, F.S.B.*, No. CIV.A. H-11-3805, 2012 WL 1231756, at *2 (S.D. Tex. Apr. 12, 2012) (denying motion to dismiss where the plaintiff alleged that the defendant lacked authority to foreclose because it was neither the mortgagee nor the mortgage servicer, and where the defendant was "merely one of three possible contenders for the status of current mortgagee" and the identity of "the current mortgage servicer [was] likewise ... in doubt").

### D.     Suit to Quiet Title

Defendant contends that Plaintiffs have not stated a viable quiet title claim because they "have not plead any facts demonstrating their superiority of title."  (doc. 11 at 14.)

A suit to quiet title, also known as a claim to remove cloud from title, "relies on the invalidity of the defendant's claim to property." *Gordon v. W. Houston Trees, Ltd.*, 352 S.W.3d 32, 42 (Tex. App.—Houston [1st Dist.] 2011, no pet.).  This suit "enable[s] the holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of better right." *Bell v. Ott*, 606 S.W.2d 942, 952 (Tex. Civ. App.—Waco 1980, writ ref'd n.r.e.) (citation and internal quotation marks omitted).  To prevail, a plaintiff must show that: (1) he has an interest in a specific property; (2) his title to the property is affected by a claim by the defendant; and (3) the claim, although facially valid, is invalid or unenforceable.  *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 766 (N.D. Tex. 2012) (citing *U.S. Nat'l Bank Ass'n v. Johnson*, No. 01-10-00837-CV, 2011 WL 6938507, at *3 (Tex. App.—Houston [1st Dist.] Dec. 30, 2011, no pet.) (mem. op.)).  The plaintiff "must allege right, title, or ownership in himself or herself with sufficient

certainty to enable the court to see he or she has a right of ownership that will warrant judicial interference." *Id.* at 766–67 (citing *Wright v. Matthews*, 26 S.W.3d 575, 578 (Tex. App.—Beaumont 2000, pet. denied)).  Notably, the plaintiff must prove and recover on the strength of his own title, not on the weakness of his adversary's title.  *Fricks v. Hancock*, 45 S.W.3d 322, 327 (Tex. App.—Corpus Christi 2001, no pet.).

Here, to establish their superior title to the Property, Plaintiffs: (1) challenge MERS's assignment of the note and deed of trust to Defendant; (2) claim that Defendant "is not the present owner of the debt" because the investors in the securities backed by their loan never recorded or "perfected" their interest in the loan; (3) allege that Defendant's interest in the Property has been called into question by Fannie Mae's alleged ownership of their loan; and (4) assert that as a result of the securitization, Defendant has no interest in the note and cannot foreclose on the Property. (doc. 1-6 at 6–7, 9–10.)

### 1.    *MERS's Assignment to Defendant*

Plaintiffs assert that MERS had no right to assign the note or deed of trust to Defendant because MERS was not a party to, and never had a beneficial interest in, the note, and there is no evidence in the Dallas County property records of an assignment of the note from Continental to MERS.  (*Id.* at 5.)  Defendant therefore acquired no interest in the note or deed of trust, and does not have superior title to the Property.  (*Id.*)

As previously discussed, Plaintiffs' assertions regarding MERS's role in the assignment fail because the Texas Property Code does not require the possession or ownership of the note in order to enforce the deed of trust by foreclosure.  *See Bennett*, 2013 WL 655059, at *4–5.  Because MERS had the authority to assign the note and deed of trust, upon the assignment from MERS, Defendant

and its successors and assigns acquired MERS's rights to foreclose on and sell the Property.  *See Warren*, 2012 WL 3020075, at *4.   Accordingly, Plaintiffs' allegations regarding MERS's assignment of their loan to Defendant do not give rise to a reasonable inference that they have superior title to the Property.

###   2.   *Lack of Article 9 Filings*

Plaintiffs argue that after the note was securitized, no investor in those securities ever recorded "a copy of any security agreement" to "perfect" their security interest in the debt, as they were required to do by Tex. Bus. and Com. Code § 9.607(b).  (doc. 1-6 at 7.)  They claim that as a result "of the lack of such recordings," Defendant "is not the present owner of the debt" and has no authority to foreclose on the Property.  (*Id.*)

Article 9 of the Texas Uniform Commercial Code (UCC) governs the creation, perfection, and enforcement of security interests in personal, as opposed to real, property.  *See In re Tripplet*, 84 B.R. 84, 87 (Bankr. W.D. Tex. 1988); *see also K.D.F. v. Rex*, 878 S.W.2d 589, 592 (Tex. 1994) (explaining that a creditor's "lien [was] not governed by Article Nine of the [UCC] because the collateral securing [the] Note [was] real property") (citing to Tex. Bus & Com. Code § 9.104(10)).  On the other hand, in Texas, a security interest in real property is created by a deed of trust, which is in turn governed by the law of contracts.  *See Wiley v. U.S. Bank, N.A.*, No. 3:11-CV-1241-B, 2012 WL 1945614, at *4 (N.D. Tex. May 30, 2012) (explaining that "a deed of trust is a mortgage with a power to sell on default and is governed by the same rules of interpretation that apply to contracts") (citing *Starcrest Trust v. Berry*, 926 S.W.2d 343, 351–52 (Tex. App.—Austin 1996, no pet.)).  The Texas Property Code, and not the UCC, governs the procedure for enforcing deeds of trust.  *See* Tex. Prop. Code §§ 51.0001–51.015.  Notably, even if the UCC provided the process for

creating and enforcing security interests in real property, Plaintiffs' contention that the investors in the asset-backed securities did not perfect their interest in the loan would still fail to show that their title to the Property is superior to Defendant's.  Accordingly, Plaintiffs' suit to quiet title based on the absence of article 9 filings fails on this ground as well.

### 3.    *Fannie Mae's Claim*

Plaintiffs further allege that Defendant's interest in the Property is called into question by Fannie Mae's alleged "claim of ownership [of] [their] loan." (doc. 1-6 at 6.)  They argue that with both Fannie Mae and Defendant claiming an interest in the Property, they face "the potential for multiple liabilities." (*Id.*)

Aside from the fact that their allegation about Fannie Mae's claim is unsupported by specific factual allegations, Plaintiffs fail to explain how this allegation gives rise to a reasonable inference that they have superior title to the Property.  Their contention impermissibly relies on the alleged weakness of Defendant's title and not on the strength of their own title.  *See Fricks*, 45 S.W.3d at 327.  Notably, Plaintiffs do not allege they were current on their payments when Defendant initiated the foreclosure, or assert specific facts showing they have superior right to the Property.  As noted, a  plaintiff asserting a quiet title claim must recover on the strength of his own title, not on the weakness of his adversary's title.  *See id.*  Accordingly, Plaintiffs fail to state a viable quiet title claim based on Fannie Mae's purported interest in the Property.

### 4.    *Securitization of the Note*

Lastly, Plaintiffs allege that the debt was securitized, i.e., pooled with similar debt pursuant to a PSA, and transferred into an asset-backed trust, for the purpose of creating saleable residential mortgage-backed securities.  (doc. 1-6 at 6–8.)  They argue that the transfer of the debt into the trust

extinguished the rights of any and all parties to the note.  (*See id.*)  Accordingly, Continental and MERS had no rights to assign in the note, and Defendant acquired no rights in the note via the assignment from MERS.  (*Id.*)  They also argue that the "securities transactions" subjected them to "risks, abuses, [and] prejudice," and made it impossible for them to properly discharge their obligations under the note.  (*Id.* at 8.)

Plaintiffs cite no legal authority to support their theory that any securitization of their loan rendered the note and accompanying deed of trust unenforceable and discharged their obligations under them.  Courts in this district that have considered this theory have found it without merit.  *See e.g.*, *Abruzzo*, 2012 WL 3200871, at *2; *Warren*, 2012 WL 3020075, at *6; *Lamb*, 2012 WL 1888152, at *5 (finding the borrower's argument that a pooling and servicing agreement prevented the assignment of his loan meritless; explaining that the mortgage, i.e., the deed of trust, and the loan were not interchangeable, and therefore the transfer of the loan into an asset-backed trust did not affect MERS's authority as the lender's nominee and beneficiary to foreclose on the mortgaged property pursuant to the deed of trust).

Because Plaintiffs have failed to sufficiently plead they have superior title to the Property, and because they base their quiet title claim on invalid legal theories, this claim should be dismissed with prejudice for failure to state a claim.  *See Warren*, 2012 WL 3020075, at *6.

**E.      Claim for Attorney's Fees based on "Fraud upon the Court"[12]**

Defendant moves to dismiss Plaintiffs' request for attorney's fees and court costs based on their "fraud upon the Court" theory, on the grounds that they have failed to plead a valid fraud claim. (doc. 11 at 22–23.)

---

[12] Although Defendant next addresses Plaintiffs' request for declaratory judgment, the Court addresses that request last because Plaintiffs' ability to obtain declaratory relief depends on their ability to state a viable claim.

In Texas, the elements of simple common law fraud are: (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation, the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury. *Bennett*, 2013 WL 655059, at *6 (citing *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032–33 (5th Cir. 2010)).

Here, Plaintiffs' fraud claim is based on Defendant's purported lack of authority to foreclose on the Property. (*See* doc. 1-6 at 10.) They allege that because the deed of trust was rendered "unenforceable ... [upon] the first transfer of the Note," "Defendant's pretenses of authority to foreclose, or attempt to foreclose, under the Trust Deed were fraudulent." (*Id.*) They claim that "Defendant's assertions to the Court that it [held] and [was] entitled to enforce the obligations of the Note ... constitute[d] fraud upon the Court, subjecting Defendant to sanctions and imposition of fees and costs." (*Id.*) In addition to court costs and attorney's fees, they request the reimbursement of the "unnecessary fees and charges [they paid] under the Note and Trust Deed." (*Id.*)

Plaintiffs fail to state a fraud claim against Defendant because Defendant acquired the authority to foreclose on the Property upon the assignment of the deed of trust from MERS. *See Bennett*, 2013 WL 655059, at *5; (*see also* doc. 1-6 at 26–27). Moreover, according to Plaintiffs' own complaint, as the servicer of their mortgage, Defendant could foreclose on the Property upon their default even before the assignment took place. (*See* doc. 1-6 at 6.); *see also* Tex. Prop. Code §§ 51.0001(3), 51.0025. Plaintiffs' fraud claim should be dismissed with prejudice under Rule

19

12(b)(6) for failure to state a claim as a matter of law.  *See Bennett*, 2013 WL 655059, at *6.

## F.   **Declaratory Judgment**

Defendant contends that Plaintiffs' request for declaratory relief should be dismissed because it cannot survive without a viable cause of action.  (doc. 11 at 21–22.)

Plaintiffs seek declaratory relief under the Texas Declaratory Judgments Act, codified in §§ 37.001–37.011 of the Texas Civil Practice & Remedies Code.  "The Texas act is a procedural, rather than substantive, provision, and would generally not apply to a removed action" such as this one.  *See Brock v. Fed. Nat'l Mortg. Ass'n*, No. 4:11-CV-211-A, 2012 WL 620550, at *5 (N.D. Tex. Feb. 24, 2012).  However, in light of removal, the action may be construed as one brought under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.  *See Bell v. Bank of Am. Home Loan Servicing LP*, No. 4:11-CV-02085, 2012 WL 568755, at *8 (S.D. Tex. Feb. 21, 2012) (holding that "[w]hen a declaratory judgment action is filed in state court and is subsequently removed to federal court, it is converted to one brought under the federal Declaratory Judgment Act").

The federal Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C.A. § 2201 (West 2010).  The Act "does not create a substantive cause of action" and "is merely a vehicle that allows a party to obtain an early adjudication of an actual controversy arising under other substantive law."  *Metropcs Wireless, Inc. v. Virgin Mobile USA, L.P.*, No. 3:03-CV-1658-D, 2009 WL 3075205, at *19 (N.D. Tex. Sept. 25, 2009) (Fitzwater, C.J.) (citations and internal quotation marks omitted).  The Act is an authorization and not a command, and allows federal courts broad, but "not unfettered," discretion to grant or refuse

declaratory judgment.  *Id.*

Here, Plaintiffs seek numerous declarations, including: (1) Defendant "lacks any interest under the Note and/or Trust Deed [that] may be enforced by lien upon or sale of the subject propert[y]"; (2) securitization of the note deprived Defendant of any interest in the note or deed of trust; (3) Defendant did not know whether a default occurred or was declared by the actual owners of the debt; and (4) Defendant "lacked authority to declare a default" under the note, "sell the [Property]," or "distribute any proceeds" from such sale.  (doc. 1-6 at 7–9.)  These requests are based on invalid legal theories and on Plaintiffs' unsupported contentions regarding the assignment of their mortgage.  (*See id.* at 5–9.)  Because Plaintiffs' complaint fails to state a viable claim against Defendant or demonstrate that a genuine controversy exists between the parties, their request for declaratory judgment should also be dismissed.  *See Bell*, 2012 WL 568755, at *8 (denying the plaintiff's request for declaratory judgment where she had alleged no facts leading to a conclusion that a present controversy existed between her and the defendant); *Turner v. AmericaHomeKey, Inc.*, 2011 WL 3606688, at *5–6 (N.D. Tex. Aug. 16, 2011) (Fitzwater, C.J.) (declining to entertain the plaintiff's request for declaratory judgment where he had not pleaded a plausible substantive claim).

## III.  REQUEST FOR LEAVE TO AMEND

Notwithstanding their failure to plead sufficient facts, "district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."  *In re Am. Airlines, Inc., Privacy Litig.*, 370 F. Supp. 2d 552, 567–68 (N.D. Tex. 2005) (Fitzwater, C.J.) (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)).  Here, as an alternative to dismissal of their

complaint for failure to state a claim, Plaintiffs specifically request an opportunity to replead to cure any deficiencies.  (doc. 13 at 11–12.)

Where a responsive pleading has not been filed, Rule 15(a) of the Federal Rules of Civil Procedure permits a party to amend its pleading once as a matter of course within 21 days after serving it.  Otherwise, either the opposing party's written consent or the court's leave is required. *See* Fed. R. Civ. P. 15(a)(2).  Rule 15(a) evinces a bias in favor of amendment and requires that leave be granted "freely."  *Chitimacha Tribe of La. v. Harry L. Laws Co., Inc.*, 690 F.2d 1157, 1162 (5th Cir. 1982).  A court's discretion to grant leave is severely limited by the bias of Rule 15(a) favoring amendment.  *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981). Accordingly, leave to amend should not be denied unless there is a *substantial reason* to do so. *Jacobsen v. Osbourne*, 133 F.3d 315, 318 (5th Cir. 1998).  There is a substantial reason to deny leave if the proposed amendment would cause undue delay or prejudice to the non-movant, if it is motivated by bad faith or dilatory motives, if there have been repeated failures to cure deficiencies with prior amendment, or if the amendment is futile.  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Martin's Herend Imports, Inc. v. Diamond & Gem Trading*, 195 F.3d 765, 770 (5th Cir. 1999); *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993).

Plaintiffs have not amended their complaint since filing this action.  Because they request leave to amend early in the litigation and will assert no new claims, any amended complaint would not cause undue delay or prejudice to Defendant.  *See Smith v. EMC Corp.*, 393 F.3d 590, 596 (5th Cir. 2004) (holding that an amended complaint causes prejudice when it asserts a new claim requiring the defendant "to reopen discovery" and prepare a new defense); *Hyde v. Hoffman-La Roche Inc.*, No. CIV A 304-CV-1473-B, 2008 WL 2923818, at *2 (N.D. Tex. July 30, 2008)

(finding that the proposed amendment would "undoubtedly cause undue delay and prejudice" to the defendants because it was requested "over four years into the case").  Moreover, nothing in the record suggests bad faith or a dilatory motive on Plaintiffs' part.  *See, e.g.*, *WRR Indus., Inc. v. Prologis*, No. CIV.A. 3:04-CV-2544, 2006 WL 1814126, at *5 (N.D. Tex. June 30, 2006) (finding that the proposed amendment suggested a dilatory intent and bad faith by part of the plaintiff because it had previously requested two extensions of time and filed its motion for leave "only after [the defendant] refused to drop its counterclaims").

Because there is no apparent substantial reason to deny leave to amend, Plaintiffs should be accorded an opportunity to amend their complaint to sufficiently state a claim for relief.

## IV.  RECOMMENDATION

If Plaintiffs do not file an amended complaint that states a claim for relief within the 14 days allotted for objections to this recommendation, or a deadline otherwise set by the Court, Defendant's motion to dismiss should be **GRANTED**, and all of Plaintiffs' claims against it should be dismissed with prejudice.  If Plaintiffs timely file an amended complaint, however, Defendant's motion to dismiss should be **DENIED as moot**, and the action should be allowed to proceed on the amended complaint.

**SO RECOMMENDED** on this 5th day of April, 2013.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

24